UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-20050-CR-WILLIAMS/GOODMAN(s)
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

MAURICIO GOMEZ BAEZ,

    Defendant.

_____/

FILED BY _____MP_____ D.C.

Feb 13, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## SUPERSEDING INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Superseding Information:

### RELEVANT STATUTORY BACKGROUND

1. The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

### RELEVANT INDIVIDUALS AND ENTITIES

2. From at least 2011 to 2016, Stericycle, Inc. ("Stericycle") was a Delaware corporation headquartered in Lake Forest, Illinois. Stericycle ran an international waste management network, focused primarily on medical waste, industrial waste, maritime waste, and

document destruction. Stericycle was an "issuer," as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-1(a) and 78m(b).

3. Stericycle's Latin American division ("Stericycle LATAM") was responsible for overseeing and running the operations of Stericycle's subsidiaries in Mexico, Brazil, Argentina, Chile, and Puerto Rico. Beginning at least in or about 2014 **MAURICIO GOMEZ BAEZ** along with other Stericycle LATAM leadership and staff were based in Miami, Florida.

4. **MAURICIO GOMEZ BAEZ** was a Mexican citizen and resident of Miami, Florida, who worked for Stericycle as the Senior Vice President of Stericycle LATAM. His business responsibilities included oversight and management of Stericycle LATAM and certain of Stericycle subsidiaries, including acquisitions, operations, finance, and sales. **GOMEZ BAEZ** reported to senior executives in Lake Forest, Illinois, during the relevant time period. **GOMEZ BAEZ** was an employee and agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

5. Stericycle LATAM Finance Executive ("LATAM Executive 1") was a Mexican citizen based in Mexico and was an executive of Stericycle LATAM whose business responsibilities included, among other things, the management of Stericycle LATAM's finances. LATAM Executive 1 reported to **MAURICIO GOMEZ BAEZ** as well as senior finance executives in Lake Forest, Illinois, during the relevant time period. LATAM Executive 1 was an employee of Stericycle Mexico and an agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

6. Medam S.A. de C.V., together with other affiliated entities (collectively "Stericycle Mexico"), was a wholly owned subsidiary of Stericycle and headquartered in and around Meixco City, Mexico. Stericycle Mexico was under the direction and control of Stericycle LATAM, and

2

its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Mexico and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

7. "Mexico Vendors" were Mexican companies with which Stericycle Mexico entered into sham service contracts that were used to generate funds for bribe payments to Mexican government officials.

8. Stericycle Gestao Ambiental Ltda., together with other affiliated entities (collectively, "Stericycle Brazil"), was a wholly owned subsidiary of Stericycle and headquartered in Recife, Brazil. Stericycle Brazil was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Brazil and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a)..

9. "Brazil Vendors" were Brazilian companies with which Stericycle Brazil entered into sham agreements to provide debt-collection services that were never provided. The Brazil Vendors issued false invoices that Stericycle Brazil used in its books and records to conceal the bribe payments to Brazilian government officials.

10. Habitat Ecologico S.A., together with other affiliated entities (collectively "Stericycle Argentina"), was a wholly owned subsidiary of Stericycle headquartered in Buenos Aires, Argentina. Stericycle Argentina was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Argentina and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

## COUNT 1
## Conspiracy to Commit an Offense Against the United States
## (18 U.S.C. § 371)

11.     From in or around at least 2011 and continuing through 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**MAURICIO GOMEZ BAEZ,**

did knowingly and voluntarily combine, conspire, confederate, and agree with other persons, known and unknown, including LATAM Executive 1, to commit an offense against the United States, that is,

   a.     being an employee of an "issuer," and an agent of an "issuer," to willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and part of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of (i) influencing an act and decision of such foreign official in his or her official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence any act and decision of such government and agencies and instrumentalities, in order to assist defendant **MAURICIO GOMEZ BAEZ**, Stericycle Inc., and others in obtaining and retaining business for and with, and directing business to, Stericycle Inc. and others, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-1; and

b. while in the territory of the United States, to willfully and corruptly make use of the mails and means and instrumentalities of interstate commerce and to do any other act in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and part of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of (i) influencing an act and decision of such foreign official in his or her official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence any act and decision of such government and agencies and instrumentalities, in order to assist defendant **MAURICIO GOMEZ BAEZ**, LATAM Executive 1, and others in obtaining and retaining business for and with, and directing business to, Stericycle Inc. and others, in violation of Title 15, United States Code, Section 78dd-3.

**PURPOSE OF THE CONSPIRACY**

12. It was the purpose of the conspiracy for **MAURICIO GOMEZ BAEZ**, LATAM Executive 1, and their co-conspirators to unlawfully enrich themselves by bribing Mexican, Brazilian, and Argentinian officials to obtain and retain contracts and other business advantages on behalf of and for the benefit of Stericycle.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which **MAURICIO GOMEZ BAEZ**, LATAM Executive 1, and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Florida and elsewhere:

5

13. From in or around at least 2011 and continuing through 2016, **MAURICIO GOMEZ BAEZ,** and other Stericycle employees and agents, including LATAM Executive 1, knowingly and willfully conspired to use, and did use, the mails and means and instrumentalities of interstate commerce to corruptly offer, promise to pay, authorize the payment of, and pay, approximately $10.5 million in bribes to Mexican, Brazilian, and Argentinian government officials, in order to influence those officials in their official capacities and to secure an improper advantage to assist **GOMEZ BAEZ**, Stericycle, and others, in obtaining government contracts for medical waste collection.

14. **MAURICIO GOMEZ BAEZ** and other Stericycle employees and agents expanded Stericycle LATAM through acquisitions and implemented and maintained similar methods of bribe payments in Mexico, Brazil, and Argentina. **GOMEZ BAEZ** and his co-conspirators made and caused to be made hundreds of bribe payments to foreign government officials employed by government agencies and instrumentalities in Mexico, Brazil, and Argentina to obtain and retain business advantages and to direct business to Stericycle.

15. **MAURICIO GOMEZ BAEZ** knowingly approved and directed a scheme by which employees at Stericycle Mexico, Stericycle Brazil, and Stericycle Argentina including LATAM Executive 1, made bribe payments, typically in cash, and calculated the amount of the bribes as a percentage of underlying contract payments made by or owing from a government customer. In each of the three jurisdictions, **GOMEZ BAEZ** and his co-conspirators tracked the bribe payments on spreadsheets using code words such as "IP."

16. Approximately 70% of the medical waste collection contracts were with regional government customers. Serving government customers in the various regions throughout Latin America required significant investment from Stericycle and without these customers, Stericycle

6

would not have the necessary volume to support service in each region. The government contracts typically lasted for a one-year period and were re-bid annually. With **MAURICIO GOMEZ BAEZ's** authorization and at **GOMEZ BAEZ's** direction, Stericycle LATAM employees, including LATAM Executive 1, paid bribes to the regional government officials responsible for approving the contracts to ensure Stericycle would obtain and retain the medical waste collection contracts each year.

17. **MAURICIO GOMEZ BAEZ** and other Stericycle executives, employees, and agents utilized the means and instrumentalities of interstate commerce, including the use of wires in the Southern District of Florida. In addition, Mexico, Brazil, and Argentina country managers traveled regularly to Miami for business meetings in furtherance of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object and purpose thereof, **MAURICIO GOMEZ BAEZ,** LATAM Executive 1, and their co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1. On or about January 11, 2011, LATAM Executive 1 emailed **MAURICIO GOMEZ BAEZ** providing a spreadsheet of the "Top 20 SG&A" expenses by country." In the email, LATAM Executive 1 wrote that the spreadsheet included comparisons of the SG&A numbers with and without "IP," and provided a breakdown of the amounts of the bribe payments by jurisdiction, including Mexico, Brazil, and Argentina.

2. In or around June 2012, the Mexico Executive Committee — including **MAURICIO GOMEZ BAEZ** and LATAM Executive 1 — met and discussed a breakdown of "advanced payments," including "IP" totaling 346,535 pesos.

7

3. On or about January 17, 2013, a Stericycle Mexico employee emailed **MAURICIO GOMEZ BAEZ** and LATAM Executive 1, attaching a spreadsheet "Invoices IP [] DIC.12" and describing the spreadsheet as a "reference file" that included the "monthly amount summary" and an analysis of the "concepts we use in order to sustain the operation." The attached spreadsheet included references to bribe payments from in or about January through December 2012, along with corresponding Mexico Vendors that would submit fake invoices with descriptions of fabricated services.

4. In or around September 2013, the Mexico Executive Committee — including **MAURICIO GOMEZ BAEZ** and LATAM Executive 1 — met and discussed a breakdown of "advanced payments," including "IP" totaling 1,768,866 pesos.

5. On or about October 1, 2014, a senior manager at Stericycle Mexico emailed **MAURICIO GOMEZ BAEZ**, stating "[t]he dinner with [Mexican Official 1] from [the Mexican social security agency] was postponed for tomorrow, he has been in communication supporting the process of the current contracts and apparently, he is orienting us properly." The IP spreadsheets tracking the bribe payments showed Mexican Official 1 receiving at least one bribe payment per month during most months in 2015, paid by LATAM Executive 1.

6. In or around January 2015, **MAURICIO GOMEZ BAEZ**, while in the Southern District of Florida, met with Mexico, Brazil, and Argentina country managers, who traveled regularly to Miami for business meetings, to discuss year end results for 2014, including bribe payment expenses.

7. On or about January 8, 2016, a Stericycle Brazil executive emailed **MAURICIO GOMEZ BAEZ** a version of a spreadsheet tracking bribe payments, stating "[a]s per our

8

conversation, please find attached the spreadsheet detailing the expenses with the debt collection services for 2014 and 2015."

8. On or about March 31, 2016, **MAURICIO GOMEZ BAEZ** signed a certification attesting that there were no material or potential material events necessary to be disclosed in order to make Stericycle's financial reports with the U.S. Securities and Exchange Commission not misleading.

9. On or about March 31, 2016, LATAM Executive 1, in his then role as Financial Controller for Stericycle Mexico, signed a Stericycle Business Unit Representation letter that stated, in sum and substance, that LATAM Executive 1 had "no knowledge of actual or suspected fraud, bribery, or corrupt payments affecting the Business Unit" the previous quarter. The spreadsheets created by LATAM Executive 1 that detailed payments made to public officials in January 2016 were made prior to this representation and, as such, **MAURICIO GOMEZ BAEZ** and LATAM Executive 1 knew their attestations to be false statements.

10. On or about April 14, 2016, **MAURICIO GOMEZ BAEZ** and LATAM Finance Executive caused Stericycle Mexico to pay approximately 56,000 pesos (approximately $3,208) to one of the Mexico Vendors, which was, in fact, a payment under a sham service contract used to generate funds for bribe payments in Mexico. Stericycle's general ledger reflected this payment and others to certain of the Mexico Vendors through at least April 2016.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
**(18 U.S.C. § 981(a)(1)(C))**

The allegations of this Superseding Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **MAURICIO GOMEZ BAEZ**, has an interest.

9

Upon conviction of a conspiracy to commit a violation of Title 15, United States Code, Section 78dd-1, as alleged in this Superseding Information, **MAURICIO GOMEZ BAEZ** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: MANOLO REBOSO
ASSISTANT UNITED STATES ATTORNEY

BY: PAUL A. HAYDEN
JILL SIMON
TRIAL ATTORNEYS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 24-20050-CR-WILLIAMS/GOODMAN(s)

v.

MAURICIO GOMEZ BAEZ,

Defendant.  /

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) No
Number of New Defendants 0
Total number of counts 1

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☒ 0 to 5 days
   II  ☐ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) Yes
   If yes, Judge Williams   Case No. 24-20050-CR-WILLIAMS/GOODMAN
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Moore   Case No. 21-20156-CR-Moore
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Manolo Reboso
Assistant United States Attorney
FL Bar No.   75397

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: MAURICIO GOMEZ BAEZ**

Case No:    24-20050-CR-WILLIAMS/GOODMAN(s)

Count #: 1

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371

*Max. Term of Imprisonment: Five (5) Years' Imprisonment
**Mandatory Min. Term of Imprisonment (if applicable): N/A**
*Max. Supervised Release: Three (3) Years
*Max. Fine: $250,000/$100.00 Special Assessment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 24-20050-CR-WILLIAMS/GOODMAN(s) |
| MAURICIO GOMEZ BAEZ, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Andrew George, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*